USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8/6/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CEDRIC REID,                                    :
                                                :
                                                :
                                                :
            Plaintiff,                           :
                                                :        20-CV-644 (GBD) (JLC)
     -v-                                         :
                                                :
                                                :
                                                :
THE CITY OF NEW YORK, *et al.*,                  :
                                                :
            Defendants.                         :
------------------------------------------------------------X

## <u>REPORT & RECOMMENDATION</u>

# Table of Contents

I.   BACKGROUND .................................................................................................. 2

  A.   **Factual Background** ................................................................................ 2

    1.   Exposure to Asbestos ................................................................. 4

    2.   Unsupportive Mattress .............................................................. 5

    3.   Inadequate Footwear ................................................................. 6

    4.   Exposure to Tuberculosis .......................................................... 7

    5.   Premature Release from HHC's Medical Care ........................ 7

    6.   Inadequate Ventilation and Exposure to Secondhand Smoke ........................ 8

    7.   Inadequate Medical Care ......................................................... 11

  B.   **Procedural History** ............................................................................... 12

II.  DISCUSSION ................................................................................................... 13

  A.   **Applicable Legal Standards** ............................................................... 13

    1.   Conditions of Confinement ...................................................... 17

    2.   Deliberate Indifference to Medical Needs ............................... 19

  B.   **Analysis: Reid Has Failed to State Any Plausible Claims Supported By More Than Conclusory Factual Allegations** ............................... 22

    1.   Claims Against City Defendants .............................................. 23

      a.   Unconstitutional Conditions-of-Confinement ................... 23

        i.   Exposure to Asbestos ................................................... 23

        ii.  Inadequate Footwear ................................................... 25

        iii. Unsupportive Mattress ................................................ 26

      b.   Deliberate Indifference to Medical Needs .......................... 29

        i.   Exposure to Tuberculosis ............................................. 29

        ii.  Premature Release from HHC's Medical Care ........... 30

    2.   Claims Against State Defendants ............................................ 32

      a.   Unconstitutional Conditions-of-Confinement ................... 32

        i.   Inadequate Ventilation ................................................. 33

        ii.  Exposure to Secondhand Smoke ................................. 34

      b.   Deliberate Indifference to Medical Needs .......................... 37

    3.   *Monell* Liability ........................................................................ 42

    4.   Personal Involvement .............................................................. 45

    5.   Qualified Immunity ................................................................. 51

    6.   State Law Claims ..................................................................... 51

  C.   **Leave to Amend** ................................................................................... 53

III. CONCLUSION ................................................................................................. 55

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable George B. Daniels, United States District Judge:**

Cedric Reid, proceeding *pro se*, brings this action against the City of New York, the New York City Health and Hospitals Corporation, and three individual City officials (collectively, "City Defendants") under 42 U.S.C. § 1983 for alleged violations of his constitutional rights to humane conditions of confinement and adequate medical treatment. Reid also brings this action against 14 New York State Commission of Correction and Department of Corrections and Community Supervision officials (collectively, "State Defendants"). Reid asserts a total of 11 claims that span several years and that arise from events that took place in both City and State correctional facilities. His first eight claims stem from his time in City custody, from September 2016 to May 2018, and his last three claims arise from events that occurred since June 2018, during which time he has been in State custody.

The City Defendants now move to dismiss Reid's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as to all City Defendants except one, and the State Defendants move to dismiss the complaint in its entirety pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, I recommend that both motions be granted, but that Reid be given permission to file an amended complaint.

1

## I.    BACKGROUND

### A. Factual Background

The following facts are taken from Reid's complaint and are accepted as true for purposes of the pending motions. *Smolen v. Wesley*, No. 16-CV-2417 (KMK), 2019 WL 4727311, at *4 (S.D.N.Y. Sept. 25, 2019) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Because Reid is proceeding *pro se*, the Court also considers allegations made for the first time in his opposition papers. *See, e.g., Saudagar v. Walgreens Co.*, No. 18-CV-427 (KPF), 2019 WL 498349, at *1 n.1 (S.D.N.Y. Feb. 8, 2019) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." (quoting *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)).

Reid has brought this action against the following City Defendants: the City of New York; the New York City Health and Hospitals Corporation ("HHC"); Patsy Yang, the Senior Vice President of HHC's Correctional Health Services; and Martha W. King, the former Executive President of the New York City Board of Corrections. City Defendants' Memorandum of Law in Support of its Motion to Dismiss ("City Def. Mem."), Dkt. No. 46, at 1.[1] Reid has also brought this action against the following 14 State Defendants: Allen Riley, Chairman of the New York State

---

[1] Reid also named New York City Department of Corrections Officer Nieema Everett (sued as "C.O. Everett" and "Shield No. 9257"), as a defendant in this action. Complaint ("Compl."), Dkt. No. 2, ¶ 4C; City Def. Mem. at 1. On February 22, 2021, Defendant Everett filed an answer in this action and is not a party to the City Defendants' motion. Dkt. No. 59. Therefore, for purposes of this Report & Recommendation, the phrase "City Defendants" refers to the City of New York, the New York City Health and Hospitals Corporation, Martha King, and Patsy Yang.

Commission of Correction ("SCOC"); Thomas J. Loughren, SCOC Commissioner; Terry Moran, SCOC Director; Carl J. Koenigsmann, the former Deputy Commissioner and Chief Medical Officer of the New York State Department of Corrections and Community Supervision ("DOCCS"); Anthony J. Annucci, the Acting DOCCS Commissioner; Osbourne A. McKay, the DOCCS Deputy Commissioner of Correctional Industries, Compliance Standards and Diversity; Susanna Nayshuler, the DOCCS Regional Health Services Administrator; John Hammer, the DOCCS Regional Medical Director; Michael Washington, the former DOCCS Director of Diversity Management and ADA Coordinator; Robert Morton, the former DOCCS Superintendent of Downstate Correctional Facility; Michael Capra, the DOCCS Superintendent of Sing Sing Correctional Facility; Razia Ferdous, a DOCCS Correctional Physician at Sing Sing Correctional Facility; Valerie Monroe, a DOCCS Nurse Practitioner; and Jacob Schupak, a DOCCS pharmacist.[2]

From September 16, 2016 to October 30, 2017, Reid was a pretrial detainee at the Eric M. Taylor Center ("EMTC") on Rikers Island. Complaint ("Compl."), Dkt. No. 2, ¶ 1B; Plaintiff's Memorandum of Law in Opposition to City Defendants' Motion to Dismiss ("Pl. Opp. City Def."), Dkt. No. 53-1, at 9.[3] Reid alleges that during his time as a pretrial detainee and then following his conviction on October

---

[2] Reid's complaint names "Veronica Monroe" as a defendant, but the State Defendants' papers refer to "Valerie Monroe."

[3] For all references to page numbers in Reid's opposition papers, the page number cited refers to the ECF filing number.

31, 2017, the City Defendants and then the State Defendants provided inhumane conditions of confinement and exhibited deliberate indifference to his medical needs. Compl. ¶¶ 1A–8C; Pl. Opp. City Def. at 9. These allegations are summarized in turn.

### 1. Exposure to Asbestos

First, Reid alleges that from September 23, 2016 through March 24, 2017, he was required to travel through a corridor infested with asbestos in order to access medication, visit the commissary, be transferred to court proceedings, be seen for sick calls, and access other institutional programs and services. Compl. ¶ 1C. On occasion, while Reid was en route to these services and programs, the facility's alarm would ring, and the escorting officer would instruct Reid to "put [his] hands on the wall." Pl. Opp. City Def. at 11. Reid alleges that the asbestos-covered pipes near the wall were "less than 1 foot away" from his face, and that he and other inmates would keep their hands on the wall for 15–20 minutes while waiting for the alarm to clear. *Id.* Reid does not allege how frequently the alarm rang while he was traveling through the lower corridor or how often he had to keep his hands on the wall.

On December 22, 2016, Reid submitted a grievance regarding his exposure to asbestos. Pl. Opp. City Def. at 11; Compl. Ex. A. On January 4, 2017, the Grievance Supervisor responded to Reid's submission and stated that the Environmental Health Officer Captain has "no knowledge of any Asbestos inside of EMTC." Compl. Ex. A. However, from December 16, 2016 to December 18, 2016,

the Department of Correction ("DOC") allegedly conducted an "Asbestos Abatement Project" to remove asbestos from EMTC's basement corridor.  Compl. Ex. B.  Reid alleges that he has experienced a shortness of breath, chest pains, lung inflammation, and breathing complications as a result of the alleged exposure to asbestos.  Compl. ¶ IV.

> 2.  Unsupportive Mattress

Next, from October 2016 through March 14, 2018, Reid alleges that the mattress provided by the DOC (with Defendant Martha King's consent) was unsupportive and caused him to experience sharp back pain.  Compl. ¶ 2C.  According to a tag attached to the mattress, it is "intended to be used without a foundation."  Compl. Ex. C.

On October 31, 2016, Reid submitted his initial grievance about the unsupportive mattress and requested that the DOC provide more supportive mattresses or allow double mattresses.  Pl. Opp. City Def. at 13; Compl. Ex. C.  Compl. ¶ 2C.  However, pursuant to DOC policy, "medical staff shall not write referrals for "double mattresses" and only "patients at risk for pressure ulcers should be housed in the infirmary, where medical bedding is available."  Compl. Ex. D.  Reid alleges that as a result of sleeping on the unsupportive mattress, he has experienced back pain and has a likelihood of future liver damage (a side effect of the medication he took to alleviate his back pain).  Compl.  ¶ IV.

### 3. Inadequate Footwear

From December 2016 through March 2017, the City Defendants provided Reid with a thin pair of "canvas facility-issued" sneakers that were allegedly inadequate for outdoor recreation during the winter months. Compl. ¶ 3C. Reid alleges that the City Defendants did not allow him to exercise indoors, did not provide boots that may offer additional insulation, and did not allow him to receive footwear from home. *Id.* The inadequate footwear allegedly aggravated Reid's preexisting medical condition (neuropathy) and caused him to experience numbness in his toes, a tingling sensation, and a "pins and needles" feeling. *Id.*[4] Reid further alleges that the inadequate footwear "could [have] placed his limbs in danger of amputation from frostbite." *Id.*

On December 22, 2016, Reid submitted a grievance stating that his feet could not withstand the cold in the DOC-issued canvas sneakers and requested that he be provided with seasonally appropriate footwear. Compl. ¶ 3C & Ex. F. On January 4, 2017, the Grievance Supervisor responded to Reid's submission and informed him that his grievance was not subject to the Inmate Grievance and Request Program because the "institutional footwear has been approved/implemented by BOC." Compl. Ex. F.

---

[4] Neuropathy is a condition that caused Reid to experience nerve pains and sensations such as tingling, electric shocks, cramps, spasms, and numbness. Compl. ¶ 10C.

6

### 4. Exposure to Tuberculosis

Reid alleges that between April 6, 2018 and an unspecified date, he was exposed to tuberculosis due to the City Defendants' alleged failure to locate and isolate an inmate who tested positive for the disease. Pl. Opp. City Def. at 11–13; Compl. ¶ 7C.[5] Reid alleges this failure violated the DOC's internal protocol to screen inmates for medical needs or public health concerns. *Id.*; *see also* Rules of the City of New York, 40 R.C.N.Y. § 3-04(a) ("Screening procedures shall be developed and implemented which promote timely identification of immediate needs of the inmate and of public health concerns for the institution"). Reid further alleges that this unconstitutional condition of confinement occurred "pursuant to a municipal policy or custom" and that Defendant Patsy Yang failed to adequately train and supervise HHC employees. Pl. Opp. City Def. at 23–24. As a result of this alleged exposure to tuberculosis, Reid claims that he suffers from "current and future health concerns," such as respiratory difficulties and lung inflammation. Compl. ¶¶ 7C, IV.

### 5. Premature Release from HHC's Medical Care

Reid alleges that on the morning of May 14, 2018, he was prematurely transferred from DOC's custody to a New York State correctional facility. Compl. ¶ 8C; Pl. Opp. City Def. at 15. At the time of his transfer, Reid was receiving ongoing treatment for a rotator cuff injury and had a physical therapy session scheduled for

---

[5] In his opposition papers, Reid alleges that he was exposed to tuberculosis "from April 06, 2018 – May 06, 2018 and three (3) months thereafter." Pl. Opp. City Def. at 11.

May 24, 2018. Compl. ¶ 8C; Pl. Opp. City Def. at 15. Reid alleges that the City Defendants should have placed him on a "medical hold" to ensure that this medical care was uninterrupted. Compl. ¶ 8C. Reid adds that his premature release from HHC's medical care resulted in a delay of his physical therapy to mend his rotator cuff injury. Compl. ¶ IV.

### 6. Inadequate Ventilation and Exposure to Secondhand Smoke

Reid alleges that he is a non-smoker with serious preexisting respiratory conditions: chronic obstructive pulmonary disease ("COPD") and asthma. Compl. ¶ 9C. From June 2018 onwards (following his transfer to the New York State-run Downstate Correctional Facility), Reid alleges that he was exposed to second-hand tobacco smoke (commonly referred to as environmental tobacco smoke or "ETS"). *Id.* Reid's exposure to ETS allegedly debilitated his already weakened breathing ability and caused him chest pains, shortness of breath, sputum, and wheezing. *Id.* In June 2018, Reid wrote to Downstate Superintendent Robert Morton to notify him about the ETS and its effect on his respiratory conditions, but did not receive a response. Plaintiff's Memorandum of Law in Opposition to State Defendants' Motion to Dismiss ("Pl. Opp. State Defendants"), Dkt. No. 70, at 13.

On July 9, 2018, Reid submitted a complaint to DOCCS Acting Commissioner Annucci regarding (1) expired toothpaste that allegedly gave Reid a tooth infection, (2) the lack of ventilation inside Reid's cell resulting in temperatures that "felt like 80-95 degrees," which he argued could trigger a respiratory reaction, and (3) the indoor ETS. Compl. ¶ 9C. Reid requested that Annucci install carbon monoxide

detectors, separate smokers from non-smokers, and prevent the use or sale of tobacco products at the facility. *Id.* Reid alleges that Annucci's failure to respond to Reid's complaint amounted to a deliberate indifference to his medical needs. *Id.*

On August 6, 2018, after he was transferred to Sing Sing Correctional Facility, Reid alleges that the following took place: First, he was seen for a medical callout by Nurse Monroe. Compl. ¶ 9C. Reid explained his respiratory condition concerns to her, and Monroe reviewed Reid's medical records from his prior term of state incarceration. *Id.* Reid requested a cell with a window to prevent indoor tobacco smoke from lingering in the air and exacerbating his preexisting respiratory condition. *Id.* Monroe scheduled Reid for another medical callout the following day. *Id.* On August 7, 2018, Monroe reviewed Reid's asthma-related medical records, but did not recommend or provide him with a cell with a window. *Id.*

On August 13, 2018, Reid requested an in-cell window to help with the tobacco smoke in accordance with the recommendation from Reid's former pulmonologist. Compl. ¶ 9C. Reid did not receive a response to this request and alleges that the request should have been forwarded to Dr. Razia Ferdous, Sing Sing's facility health service director ("FHSD"). *Id.*

On August 20, 2018, Reid wrote to Monroe to follow up on his request for a different cell. *Id.* On August 27, 2018, Reid wrote to Sing Sing Superintendent Capra and informed him that he was being exposed to harmful and unwanted fumes despite his preexisting respiratory conditions. *Id.* Reid requested to be moved to a windowed cell in Sing Sing's 5-Building in order to counteract the effects

of ETS exposure.  *Id.*  On September 4, 2018, Reid wrote to Governor Andrew M. Cuomo to complain about the persistent ETS at New York State correctional facilities.  *Id.*

On September 10, 2018, Superintendent Capra denied Reid's request for a cell change and did not refer the matter to medical professionals at Sing Sing. Compl. ¶ 9C.  On October 3, 2018, Reid was moved to a windowed cell in 5-Building. *Id.*  However, the cell entrance was a gate with open bars (rather than a solid door), thereby permitting the fumes to continue entering Reid's cell.  *Id.*

On October 16, 2018, Reid received a letter from DOCCS Deputy Commissioner McKay.  *Id.*  The letter stated that "Governor Cuomo and Acting Commissioner Annucci has asked [McKay] to respond to [Reid's] letter regarding second-hand smoke" and acknowledged that while Reid's "medical condition did not warrant reasonable accommodation," he had nonetheless been moved to a cell in 5-Building where he has access to, and control of, a window.  Plaintiff's Memorandum of Law in Opposition to State Defendants' Supplemental Memorandum of Law in Support of Defendant Annucci's and McKay's Motion to Dismiss ("Pl. Opp. State Def. Supp. Mem."), Dkt. No. 69, Ex. C.  Director Washington and Superintendent Capra were copied on the correspondence.  *Id.*

More than a year later, on October 28, 2019, Reid received a surgical pathology exam at Westchester Medical Center that indicated a "serious respiratory condition."  Compl. ¶ 9C & Ex. P.  Reid alleges that the State Defendants were deliberately indifferent to his medical needs by failing to take steps to limit his

10

exposure to ETS and by failing to enforce the DOCCS' "zero-smoking policy."
Compl. ¶ 9C.

Between September 2018 and September 2019, Reid wrote to the SCOC on approximately five occasions to complain about ETS at DOCCS facilities. *Id.* at ¶ 11C. On two occasions, the SCOC construed Reid's complaints to be a request under New York's Freedom of Information Law ("FOIL") rather than a complaint under New York Correction Law Article 3, §§ 44–46. On the remaining three occasions, the SCOC did not respond to Reid's complaints. *Id.*

Reid alleges that as a result of the State Defendants' deliberate indifference to his ETS exposure, he has experienced shortness of breath, chest pains, and lung inflammation. Compl. ¶ IV.

### 7. Inadequate Medical Care

The last set of Reid's allegations centers on inadequate medical treatment with respect to his physical therapy, respiratory conditions (in light of the ETS exposure), and neuropathy while in state custody. Pl. Opp. State Def. at 21–22. First, Reid alleges that his physical therapy at Sing Sing was only "on/off" and failed to adequately treat and heal his rotator cuff injury. *Id.*; *see also* Compl. ¶ IV. Next, as discussed above, Reid alleges that the State Defendants' failure to provide a smoke-free environment constituted inadequate treatment for his respiratory conditions. Pl. Opp. State Def. at 21.

Reid further alleges that the State Defendants failed to provide him with adequate treatment for his neuropathy by denying him his gabapentin medication.

11

*Id.* at 22; *see also* Compl. ¶ 10C.  On or around mid-August 2018, Nurse Monroe informed Reid that there was an issue receiving this medication.  Compl. ¶ 10C. Reid was prescribed gabapentin as treatment for his neuropathy.  *Id.*  On September 4, 2018, Reid wrote to Deputy Commissioner Koenigsmann to complain about the reduction of his gabapentin medication.  Compl. ¶ 10C.  On September 10, 2018, Reid received a response directly from Dr. Koenigsmann, and Reid was "afforded an extension [of] receiving the gabapentin medication."  *Id.*  Reid alleges that Schupak, a pharmacist at Sing Sing, tampered with Reid's gabapentin by removing the contents from its time-release capsule and placing it into a clear medicine cup for Reid to ingest.  *Id.*  Reid was then seen by both a neurologist, who administered tests on Reid's hands and feet, and a hand specialist, who recommended that Reid take gabapentin.  Compl. ¶ 10C.  Reid alleges that Nurse Monroe, Dr. Ferdous, and Regional Medical Director Hammer did not allow Reid to receive the medication, causing him to experience nerve pain.  *Id.*  Instead, Reid received another medication, nabumetone.  Compl. IV.  As a result of the State Defendants' actions, Reid alleges that he experienced a "tingling sensation, burning (hot) feet, electric shocks, cramps, spasms, balancing difficulties [and] numbness in several fingers . . . ."  *Id.*

### B. Procedural History

On January 22, 2020, Reid commenced this suit against the City Defendants and the State Defendants.  Dkt. No. 2.  On September 28, 2020, this case was referred to me for general pre-trial supervision and for a report and

12

recommendation on any dispositive motions. Dkt. No. 21. On January 6, 2021, the

City Defendants moved to dismiss the complaint for failure to state a claim. Dkt.

No. 45–46. On February 8, 2021, the State Defendants moved to dismiss the

complaint for lack of subject matter jurisdiction and for failure to state a claim.

Dkt. No. 51–52. Reid submitted his opposition to the City Defendants' motion on

February 12, 2021, and the City Defendants submitted reply papers on March 9,

2021. Dkt. Nos. 53, 63. On February 22, 2021, the State Defendants submitted

supplemental briefing with respect to two individual State Defendants: Annucci and

McKay. Dkt. No. 60. Reid submitted his opposition to the State Defendants' motion

and supplemental briefing on May 10 and May 20, 2021, respectively. Dkt Nos. 69,

70. The State Defendants submitted reply papers on June 4, 2021. Dkt. No. 74.

## II.   DISCUSSION

### A. Applicable Legal Standards

Federal courts are "courts of limited jurisdiction, and Rule 12(b)(1) requires

dismissal of an action 'when the district court lacks the statutory or constitutional

power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364

(S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.

2000)). "The party invoking the Court's jurisdiction bears the burden of

establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.,* 15 F. Supp. 3d 447,

450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)).

When deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, "the

Court 'must accept as true all material facts alleged in the complaint and draw all

reasonable inferences in the plaintiff's favor.'" *Id.* (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019). When a defendant moves for dismissal under Rule 12(b)(1) in addition to other grounds, "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Armour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No 09-CV-6547 (BSJ), 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must plead facts in his complaint that "state a claim to relief that is plausible on its face" and that satisfy Federal Rule of Civil Procedure 8(a)(2). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). A claim is facially plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Nevertheless, this standard still requires a plaintiff's pleadings to sufficiently "nudge[ ] [its] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Furthermore, "[a] plaintiff's

14

obligation to provide the grounds of [his] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Therefore, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (complaint insufficient if it lacks factual allegations necessary "to give the defendant fair notice of what the claim is and the grounds upon which it rests").

A complaint filed by a *pro se* plaintiff "is to be liberally construed and . . . must be held to less stringent standards than formal pleadings drafted by lawyers." *Bennett v. City of New York*, 425 F. App'x 79, 80 (2d Cir. 2011) (quoting *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008)). Accordingly, pleadings of a *pro se* party should be read "to raise the strongest arguments they suggest." *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (internal quotation marks omitted). In addition, as previously noted, the Court may also consider allegations that appear in a *pro se* plaintiff's opposition papers or other submissions to the Court. *See e.g., Henning v. N.Y.C. Dep't of Corr.*, No. 14-CV-9798 (JPO), 2016 WL 297725, at *3 (S.D.N.Y. Jan. 22, 2016) ("Although this allegation appears in his opposition papers, the Court – consistent with its duty to liberally construe *pro se* pleadings – will credit Plaintiff's assertion in evaluating the sufficiency of his complaint.").

Nevertheless, dismissal of a *pro se* complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual

15

allegations. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In other words, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Jones v. City of N.Y.*, No. 18-CV-1937 (VSB), 2020 WL 1644009, at *5 (S.D.N.Y. Apr. 2, 2020) (quoting *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009)).

The Court broadly construes Reid's Complaint as asserting (1) claims of deliberate indifference to unconstitutional conditions of confinement and to serious medical needs against both the City Defendants and State Defendants pursuant to § 1983; (2) claims against the City Defendants pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), arising out of any official municipal policies or customs that caused any of the alleged constitutional violations; and (3) state law gross negligence claims against State Defendants Riley, Loughren, and Moran. Under § 1983, a plaintiff must show that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).[6] Because the elements of different constitutional violations vary, "[t]he factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue . . ." *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).

---

[6] In *Tangreti*, the Second Circuit overturned its decision in *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), which had set forth five categories of evidence that may establish the liability of a supervisory official for a subordinate's conduct under § 1983. 983 F.3d at 616–18.

1.   Conditions of Confinement

Reid was a pretrial detainee from September 16, 2016 to October 30, 2017. Accordingly, his deliberate indifference claims arising during this period must be analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, as "[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner – neither cruelly and unusually nor otherwise.'" *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citations omitted). On the other hand, Reid's deliberate indifference claims arising after his conviction on October 31, 2017 must be analyzed under the Eighth Amendment standard. *Id.*; *see also* Pl. Opp. City Def. at 9.

Contrary to the City Defendants' assertion, the deliberate indifference standard under the Fourteenth Amendment is not quite "synonymous" with the Eighth Amendment standard. City Def. Mem. at 5 n.2. Under both the Fourteenth and Eighth Amendments, a plaintiff must satisfy both an "objective" prong establishing that the deprivation was "sufficiently serious that he was denied the minimal civilized measure of life's necessities," and a "subjective" prong establishing that the "defendant official acted with a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health and safety." *Darnell*, 849 F.3d at 29 (internal quotations omitted). However, while the "objective prong" analysis is the same under both amendments, the "subjective" prong differs. *Id.* at 29–30.

17

Under both the Eighth and Fourteenth Amendments, a plaintiff can establish an objective deprivation by showing that "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health . . ." *Id.* at 30 (citing *Walker*, 717 F.3d at 125). This includes "the risk of serious damage to physical and mental soundness." *Id.* (citing *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)). There is no bright-line test to determine whether a deprivation is sufficiently serious; instead, "the conditions themselves must be evaluated in light of contemporary standards of decency." *Blisset v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Conditions of confinement "may be aggregated to rise to the level of a constitutional violation, but 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Darnell*, 849 F.3d at 30 (quoting *Walker*, 717 F.3d at 125).

In order to meet the "subjective" or "*mens rea*" prong under the Fourteenth Amendment, a plaintiff must prove "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

To meet the subjective element under the Eighth Amendment, a plaintiff must show that the defendant "acted with more than mere negligence," and instead knew of and disregarded an "excessive risk to inmate health or safety." *Walker*, 717

18

F.3d at 125.  A defendant cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Gunn v. Annucci*, No. 20-CV-2004 (PMH), 2021 WL 1699949, at *8–9 (S.D.N.Y. Apr. 29, 2021) (quoting *Darnell*, 849 F.3d at 32).

### 2.  Deliberate Indifference to Medical Needs

As with his conditions-of-confinement claims, Reid's deliberate indifference to medical needs claims arising from his time as a pretrial detainee must be analyzed under the Fourteenth Amendment, while any post-conviction deliberate indifference claims must be analyzed under the Eighth Amendment.  *See Davis v. McCready*, 283 F. Supp. 3d 108, 116 (S.D.N.Y. 2017) (citing *Darnell*, 849 F. 3d at 29).  To state a claim for deliberate indifference to serious medical needs, "a pretrial detainee must satisfy a two-pronged test: First, the alleged deprivation of adequate medical care must be 'sufficiently serious.'"  *Id.* (quoting *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717 (S.D.N.Y. 2017)).  Second, "the defendant must act with a 'sufficiently culpable state of mind.'"  *Id.* (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

Under both the Fourteenth and Eighth Amendment, determining whether a deprivation of medical care is objectively serious involves two inquiries: "whether the prisoner was actually deprived of adequate medical care," and "whether the

19

inadequacy in medical care is sufficiently serious," which in turn "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006); *see also Davis*, 283 F. Supp. 3d at 117. "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has offered the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Id.* The term "sufficiently serious" has also been described as "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Sonds v. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 310 (S.D.N.Y. 2001).

If the alleged unreasonable medical care is "a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Davis*, 283 F. Supp. 3d at 120 (quoting *Salahuddin*, 467 F.3d at 280). However, "[i]n cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower." *Id.* If an inmate is receiving ongoing treatment and the offending conduct is an unreasonable delay or interruption in that treatment, "the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical

condition alone." *Id.*; *see also Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003). In evaluating whether a delay or interruption in treatment is sufficiently serious, "the actual medical consequences that flow from the alleged denial of care will be highly relevant." *Smith*, 316 F.3d at 187; *see also Snyder v. Alam*, No. 15-CV-4033 (VB), 2016 WL 2642226, at *4 (S.D.N.Y. May 6, 2016) ("only those injuries plaintiff specifically attributes to the delay will be considered").

As with conditions-of-confinement claims, the framework for the "subjective" or "*mens rea*" prong of the analysis differs between the Fourteenth and Eighth Amendments. Under the Fourteenth Amendment, a plaintiff must plead sufficient facts to suggest that "an objectively reasonable person in [d]efendant's position would have known, or should have known, that [d]efendant's actions or omissions posed an excessive risk of harm" to the plaintiff. *Davis*, 283 F. Supp. 3d at 120 (citing *Darnell*, 849 F.3d at 35); *see also Lloyd*, 246 F. Supp. 3d at 719. However, "something more than negligence is needed to elevate a claim of medical misconduct to a constitutional tort." *Davis*, 283 F. Supp. 3d at 121 (citing *Darnell*, 849 F.3d at 36 ("But any § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence.")).

To satisfy the subjective prong under the Eighth Amendment, a plaintiff must show that prison officials were "subjectively reckless in their denial of medical care." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citing *Salahuddin*, 467 F.3d at 280). This means that the official must have "appreciate[d] the risk to which a prisoner was subjected," and have had a

"subjective awareness of the harmfulness associated with those conditions." *Darnell*, 849 F.3d at 35; *see also Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280. An official's awareness of the risk of serious harm can be established through "inference from circumstantial evidence," including "from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). However, "mere negligence" is insufficient to state an Eighth Amendment claim for deliberate indifference. *Walker*, 717 F.3d at 125 (quoting *Farmer*, 511 U.S. at 835). Nor does "mere disagreement over the proper treatment . . . create a constitutional claim"; "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

### B. Analysis: Reid Has Failed to State Any Plausible Claims Supported By More Than Conclusory Factual Allegations

The Court first considers Reid's constitutional claims against the City Defendants and the State Defendants and then examines any state law claims against State Defendants Riley, Loughren, and Moran. As discussed below, Reid

22

has failed to state any plausible claims against the City Defendants or State Defendants.

    1. <u>Claims Against City Defendants</u>[7]

        a. <u>Unconstitutional Conditions-of-Confinement</u>

Reid alleges that his exposure to asbestos, inadequate footwear, and the unsupportive mattress constituted unconstitutional conditions of confinement. Pl. Opp. City Def. at 9–15.

            i.     <u>Exposure to Asbestos</u>

Exposure to asbestos can pose a sufficiently serious risk to health to satisfy the objective prong of a deliberate indifference claim. *Pratt v. City of New York*, 929 F. Supp. 2d 314, 320 (S.D.N.Y. 2013) (citing *LaBounty v. Coughlin*, 137 F.3d 68, 72 (2d Cir. 1998)); *see also Wright v. New York State Dep't of Corr. Servs.*, No. 06-CV-3400 (RJS) (THK), 2008 WL 5055660, at \*10 (S.D.N.Y. Oct. 10, 2008) ("Exposure to unsafe levels of toxic substances, such as tobacco smoke or asbestos, may suffice as sufficiently dangerous conditions to satisfy the objective element of an Eighth Amendment claim."), *adopted by* 2008 WL 5084193 (Nov. 24, 2008). However, not just any level of exposure to hazardous materials (such as asbestos) is sufficient to give rise to a constitutional claim. *Johnakin v. N.Y.C. Dep't of Corr.*, No. 11-CV-4807 (SLT) (LB), 2013 WL 5519998, at \*17 (E.D.N.Y. Sept. 30, 2013). Rather, an

---

[7] In addition to the allegations previously summarized, the Complaint also contains allegations regarding Reid's exposure to feces and being subject to excessive force. Compl. ¶¶ 5A–5C; ¶¶ 6A–6C. However, Reid has not named the individuals involved in those allegations as defendants. Moreover, the City Defendants do not address these allegations. Therefore, the Court will not discuss those allegations or analyze whether they state a cognizable claim.

inmate must be exposed to "an unreasonably high concentration of air-borne asbestos particles." *Id.* at \*17; *see also Pack v. Artuz*, 384 F. Supp. 2d 63, 79–80 (S.D.N.Y. 2004) ("For exposure to airborne asbestos fibers to create a substantial risk of serious harm . . . the intensity and duration of the exposure must both be significant.").

On the present record, Reid has not pleaded sufficient facts to establish that he was exposed to an "unreasonably high concentration of air-borne asbestos particles." *Johnakin*, 2013 WL 5519998, at \*17. Reid alleges only that he was required to use the lower corridor to access services and programs and that he would occasionally have to stand near asbestos-covered pipes for 15 to 20 minutes at a time when the facility alarm rang. Pl. Opp. City Def. at 10. However, Reid does not allege how frequently the alarm rang while he was traveling through the lower corridor or how often he had to keep his hands on the wall. Moreover, the DOC conducted an asbestos abatement project in the EMTC basement corridor from December 16–18, 2016. Compl. ¶ 1C; Compl. Ex. B. Thus, any asbestos-related claim would be limited to the period between September 23 and December 18, 2016, unless Reid pleads additional facts alleging that asbestos particles were still present in the lower corridor after December 18, 2016 and that he continued to be exposed to an unreasonably high concentration of those particles.

Reid has also not alleged enough facts to determine whether the alleged exposure to asbestos rose to the level of an "unreasonable risk of serious damage to his health" or whether the City Defendants knew or should have known that the

24

asbestos exposure posed an "excessive risk" to Reid's health or safety. *See Darnell*, 849 F.3d at 35. On December 22, 2016, Reid submitted a grievance regarding his exposure to asbestos. Compl. Ex. A. However, Reid merely stated in his grievance form that he was exposed to asbestos since his arrival on September 23, 2016, but did not provide additional details demonstrating that the level of exposure was unreasonably high or posed an unreasonable risk of damage to his health. *Id.* Moreover, even if the allegations in the Complaint satisfied the objective prong of an unconstitutional conditions-of-confinement claim, there are no facts pled that would suggest that any of the City Defendants knew of or should have known of an excessive risk to Reid's health.[8]

### ii.    Inadequate Footwear

Next, Reid alleges that between December 2016 and March 2017, the DOC issued inadequate footwear to inmates for outdoor recreation and that this footwear aggravated his neuropathy and caused him to experience "numbness," a "tingling sensation," and a "pins and needles feeling." Compl. ¶ 3C. While these allegations are concerning, they are not sufficiently serious to support a claim of unconstitutional conditions-of-confinement. *See Simmons v. Cripps*, No. 12-CV-1061 (PAC) (DF), 2013 WL 1290268, at *16 (S.D.N.Y. Feb. 15, 2013) (plaintiff's allegation that prison-issued shoes afforded no protection against rain or cold was

---

[8] Because this claim, as well as the claim regarding inadequate footwear discussed next, arose during the period when Reid was a pretrial detainee, the Fourteenth Amendment's deliberate indifference analytical framework applies. *Darnell*, 849 F.3d at 29.

not sufficiently serious to state constitutional violation), *adopted by* 2013 WL 1285417 (Mar. 28, 2013).  Courts in this Circuit have consistently determined that "pinched nerves, sores, calluses, bleeding heels, and back and leg problems" resulting from being forced to wear institutional footwear do not "offend contemporary standards of decency . . . ." *Id.* (quoting *Stevens v. City of New York*, No. 12-CV-3808 (JMF), 2013 WL 81327, at *3 (S.D.N.Y. Jan. 8, 2013).  The injuries Reid allegedly suffered are no worse than the injuries other courts have considered to be inoffensive to contemporary standards of decency, and therefore these allegations cannot support an unconstitutional conditions-of-confinement claim.

Moreover, Reid has not alleged sufficient facts to establish that any of the City Defendants knew or should have known that the institutional footwear posed an "excessive risk" to his health or safety.  In his December 22, 2016 grievance, Reid states only that the institutional footwear caused his feet to feel cold and does not mention any impact that the footwear had on his neuropathy.  Compl. Ex. F.  Thus, the Court cannot conclude that the City Defendants "failed to act with reasonable care to mitigate" any risk associated with the institutional footwear, or that the City Defendants "knew, or should have known" that the footwear posed an excessive risk to Reid's health.  *Darnell*, 849 F.3d at 35.

### iii.   Unsupportive Mattress

Reid further alleges that from October 2016 through March 14, 2018, the unsupportive mattress provided by the DOC caused him sharp back pain.  Compl. ¶¶ 2B, 2C.  In general, "the Eighth Amendment does not mandate comfortable . . .

beds." *Youmans v. Schriro*, No. 12-CV-3690 (PAE) (JCF), 2013 WL 6284422, at \*5 (S.D.N.Y. Dec. 3, 2013) (quotation omitted).  However, a plaintiff's conditions-of-confinement claim based on an unsupportive mattress may survive a motion to dismiss if "(1) the plaintiff had a medical condition requiring a non-standard bed to protect against serious damage to his future health; (2) he made his condition known to the prison officials; (3) he requested a non-standard bed to accommodate the condition; and (4) his request was denied by an official who knew of and disregarded an excessive risk to the plaintiff's health or safety."  *Id.*; *see also DelaCruz v. City of New York*, No. 15-CV-3030 (PAE), 2015 WL 2399346, at \*2 (S.D.N.Y. May 19, 2015).

Reid alleges that the mattress has caused him "sharp[] back pains," but has not alleged that he suffers from a pre-existing medical condition necessitating a special mattress to protect against serious damage to his future health.  Compl. ¶ 2C.  In his opposition papers, Reid alleges that he informed his health care provider about his back pain and requested an additional mattress at sick-call.  Pl. Opp. City Def. at 23.  However, Reid has not alleged any facts to establish that his back pain preceded his confinement and required a special mattress, nor does he provide the factual information necessary to establish that his back pain resulted from the mattress.  *See, e.g., DelaCruz*, 2015 WL 2399346, at \*2 (plaintiff failed to satisfy objective element of conditions-of-confinement claim when he did not "describe his prior injuries" or "indicate how the prison bedding has caused or exacerbated his claimed injuries"); *see also Turner v. City of New York*, No. 16-CV-

27

8864 (PAE) (RWL), 2017 WL 6942760, at *3 (S.D.N.Y. Dec. 12, 2017) (dismissing unsupportive mattress claim), *adopted by* 2018 WL 401513 (Jan. 12, 2018).[9]

Even if Reid had plausibly alleged that his back pain was sufficiently serious to satisfy the objective prong, he has not alleged enough facts to establish that any of the City Defendants knew or should have known that the mattress posed an "excessive risk" to Reid's health and safety.  Reid alleges that his health care provider rejected his request for a double mattress and would not grant a request for a new mattress, but only pleads that he requested these changes to "alleviate back pains."  Pl. Opp. City Def. at 22.  Without more, the Court cannot infer that any of the City Defendants knew or should have known of an excessive risk to Reid's health, or that they knew of and disregarded a substantial risk of harm to Reid's health.[10]

To the extent Reid alleges that the City Defendants' denial of a double mattress or replacement mattress constitutes deliberate indifference to his medical needs, that claim should be dismissed as well.  In general, non-urgent injuries, such

---

[9] Reid also alleges that the DOC provides the mattresses in apparent contravention of the usage instructions, which state that the mattress is intended to be used "without a foundation."  Pl. Opp. City Def. at 13; Compl. Ex. C.  However, courts in this district have repeatedly found that these instructions relate to fire safety rather than chiropractic health.  *See, e.g., Daly v. City of New York*, No. 16-CV-6521 (PAE) (JCF), 2017 WL 2364360, at *4 (S.D.N.Y. May 30, 2017), *adopted by* 2017 WL 2963502 (July 11, 2017); *Howard v. City of New York*, Nos. 12-CV-4069 et al. (PAE) (JCF), 2012 WL 7050623, at *6 (S.D.N.Y. Dec. 20, 2012), *adopted as modified*, 2013 WL 504164 (Feb. 11, 2013).

[10] Because Reid's claim based on the unsupportive mattress occurred both when he was a pretrial detainee and after he was convicted, the Court has considered whether he has met the subjective prong under both the Fourteenth and Eighth Amendments.

as back pain, do not amount to a serious medical condition.  *See, e.g., Lewis v. Westchester Cty.*, No. 18-CV-4086 (NSR), 2020 WL 5535374, at *4 (S.D.N.Y. Sept. 14, 2020) (citing *Green v. Senkowksi*, 100 Fed. App'x 45, 47 (2d Cir. 2004)). Moreover, Reid does not allege that the back pain he experienced posed an excessive risk to his health and safety.  *See e.g., Davis*, 283 F. Supp. 3d at 123 (dismissing deliberate indifference claim based on failure to provide therapeutic mattress because plaintiff did not allege how resulting back pain posed excessive risk to health and safety).

> b.  <u>Deliberate Indifference to Medical Needs</u>
>
> i.  <u>Exposure to Tuberculosis</u>

Reid argues that his exposure to tuberculosis between April 2018 and July 2018 constitutes deliberate indifference to a serious medical need.  Compl. ¶¶ 7B, 7C; Pl. Opp. City Def. at 11–13.  Reid alleges that he suffers from "debilitating" respiratory difficulties and that by exposing him to tuberculosis, the City Defendants put his current and future health in jeopardy.  Compl. ¶ 7C.[11]

---

[11] In his opposition papers, Reid asks the Court to take judicial notice of a *New York Daily News* article from December 26, 2018 titled "Manipulated Stats and Illegal Searches of Inmate Medical Records – DOC Honcho Makes Explosive Allegations in Discrimination Suit."  Pl. Opp. City Def. at 24–25. The article discussed an employment discrimination suit filed by the DOC Deputy Commissioner for Health Affairs and reported that prison officials exposed inmates to tuberculosis from April 6, 2018 to May 6, 2018.  *Id.* at 12.  At the motion to dismiss stage, the Court can take judicial notice that a newspaper article was published, but cannot take judicial notice of the truth of the facts in the article.  *See Karol v. City of New York*, 396 F. Supp. 3d 309, 318 (S.D.N.Y. 2019) (citing *Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)); *Ayala v. Looks Great Servs., Inc.*, No. 14-CV-6035 (ADS) (SIL), 2016 WL 3541548, at *8 (E.D.N.Y. June 23, 2016)).  Because Reid seeks to offer this news article for the truth of its contents, it is not proper for the Court to take judicial notice of it at this time.

Exposure to tuberculosis is undoubtedly a serious medical need, and the City Defendants do not argue otherwise. City Def. Mem. at 9; *see also Jones v. Goord*, 435 F. Supp. 2d 221, 245 (S.D.N.Y. May 26, 2006) ("There can be little doubt that [tuberculosis], if contracted by an inmate, would result in serious harm."). However, Reid does not allege that he was actually exposed to the inmate with tuberculosis and does not allege that he ever contracted tuberculosis. In addition, Reid does not allege that any respiratory conditions he experienced are related to or were caused by his alleged exposure to tuberculosis. Nor does Reid allege that he was denied any medical treatment or received any inadequate treatment related to tuberculosis, or that the City Defendants were aware of a substantial risk to Reid's health specifically and disregarded that risk. Therefore, Reid has not alleged sufficient facts about his tuberculosis exposure to support a deliberate indifference claim.

#### ii.   Premature Release from HHC's Medical Care

Next, Reid contends that the City Defendants were deliberately indifferent to his medical needs by releasing him from HHC's medical custody and transferring him to a New York State correctional facility when they did. Compl. ¶ 8C. At the time of the transfer, Reid was allegedly undergoing treatment and physical therapy for a rotator cuff injury in his right shoulder. *Id.*; Pl. Opp. City Def. at 25–26. Reid alleges that the transfer to a state facility delayed his sixth physical therapy appointment and interrupted his ongoing treatment. Compl. ¶ 8C; Pl. Opp. City Def. at 25–26.

Because Reid was receiving ongoing treatment for his rotator cuff injury, the Court construes this claim as arising out of "delayed treatment," and therefore must consider the "severity of the temporary deprivation alleged by the prisoner." *Ayuso v. Bentivegna*, No. 18-CV-3419 (NSR), 2021 WL 2535535, at *3 (S.D.N.Y. June 21, 2021) (citing *Smith*, 316 F.3d at 186). Reid has not pleaded enough facts for the Court to determine "the actual medical consequences that flow" from the City Defendants' alleged delay of care. *Smith*, 316 F.3d at 187. Reid alleges that his rotator cuff injury "placed [him] in extreme pain for the entire ride [to the New York State facility]," Pl. Opp. City Def. at 26, but does not specifically attribute that injury to the delay of his sixth physical therapy appointment. *See Snyder*, 2016 WL 2642226, at *4 ("only those injuries plaintiff specifically attributes to the delay will be considered"). Without more, Reid cannot satisfy the objective prong of a deliberate indifference to medical needs claim.

Even if the delayed treatment for Reid's rotator cuff injury satisfied the objective prong, his claim as alleged does not demonstrate that the City Defendants had a "subjective awareness of the harmfulness associated" with Reid's transfer to a state facility. *Darnell*, 849 F.3d at 35. Reid has alleged no facts demonstrating that the City Defendants were actually aware or should have been aware that a New York State correctional facility would provide inadequate treatment for Reid's rotator cuff injury and then disregarded that risk by approving Reid's transfer to a state facility. *See Green v. McLaughlin*, 480 F. App'x 44, 48 (2d Cir. 2012) (plaintiff failed to satisfy subjective prong because he did not allege that prison medical staff

31

at pre-transfer facility was aware of substantial risk that post-transfer facility would provide inadequate treatment for plaintiff's medical condition).  Therefore, Reid has not alleged the requisite facts regarding his transfer to a state facility to support a deliberate indifference to medical needs claim.

In sum, Reid has not alleged any set of facts sufficient to support a cognizable unconstitutional conditions-of-confinement claim or a deliberate indifference to medical needs claim during his time in custody at DOC facilities, and therefore those claims should be dismissed.

### 2.    Claims Against State Defendants

#### a.  Unconstitutional Conditions-of-Confinement

In his Complaint, Reid alleges that a variety of conditions at the New York State Downstate ("Downstate") and Sing Sing Correctional Facilities ("Sing Sing"), where he was incarcerated after leaving city custody, such as exposure to inadequate ventilation, high temperatures, and secondhand tobacco smoke, give rise to an Eighth Amendment unconstitutional conditions-of-confinement claim. Compl. ¶ 8C, 9C.  As discussed above, "[t]o state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Walker*, 717 F.3d at 125.

32

i.        Inadequate Ventilation

First, Reid alleges that one building at Downstate had inadequate ventilation

due to blocked windows, resulting in temperatures "feeling like 80-95 degrees

indoors" and preventing heat from venting out of the cell.  Compl. ¶ 8C.  In general,

inadequate ventilation that results in extreme temperatures or produces unsanitary

conditions rises to the level of a constitutional violation if it constitutes an

"objectively, sufficiently serious . . . denial of the minimal civilized measure of life's

necessities."  *Willey v. Kirkpatrick*, 801 F.3d 51, 66 (2d Cir. 2015); *see also Darnell*,

849 F.3d at 30 ("Unsanitary conditions, especially when coupled with other

mutually enforcing conditions, such as poor ventilation and lack of hygienic items[,]

. . . can rise to the level of an objective deprivation.").  In order to properly assess

whether a constitutional violation occurred, the Court must understand the severity

of the conditions and the duration that Reid was exposed to them.  *See, e.g., Darnell*,

849 F.3d at 30; *Figueroa v. Cty. of Rockland*, No. 16-CV-6519 (NSR), 2018 WL

3315735, at *7 (S.D.N.Y. July 5, 2018) (dismissing conditions-of-confinement claim

alleging lack of ventilation, insect infestation, and feces/bodily fluids on the walls

because plaintiff did not provide details as to duration of conditions); *Jackson v.

Sullivan Cty.*, No. 16-CV-3673 (JCM), 2018 WL 1582506, at *4 (S.D.N.Y. Mar. 27,

2018) (dismissing conditions-of-confinement claim in absence of allegations

regarding severity and duration).

Here, while Reid alleges inadequate ventilation in Downstate's Complex 1B

and temperatures around 80–95 degrees, he provides no further information from

33

which the Court can ascertain the severity and duration of these conditions.  As a result, the Court cannot determine that these conditions posed an objectively unreasonable risk to his health, and thus, Reid has not satisfied the objective prong of a deliberate indifference claim based on his conditions of confinement.

Even if Reid had pleaded sufficient facts related to the severity and duration of the ventilation and temperature conditions at Downstate, he has not pled any facts demonstrating that any of the individual State Defendants knew of and disregarded an "excessive risk" to Reid's health or safety.  *See, e.g., Walker*, 717 F.3d at 125 (plaintiff must show that defendant "acted with 'more than mere negligence'" and instead knew of and disregarded an "excessive risk to inmate health and safety").  Here, Reid alleges only that he made Superintendent Morton and Acting Commissioner Annucci "fully aware" of the poor ventilation conditions and hot temperatures, and that Morton never responded to Reid's correspondence or took action to ameliorate the conditions.  Pl. Opp. State Def. at 13; *see also* Compl. ¶ 8C; Pl. Opp. State Def., Ex. 1.  These allegations, without more, fail to demonstrate that Morton or Annucci acted in a manner that rose above the level of "mere negligence," and therefore Reid has failed to satisfy the subjective prong of the analysis.

ii.     Exposure to Secondhand Smoke

Next, Reid contends that his exposure to secondhand tobacco smoke at both Downstate and Sing Sing constituted unconstitutional conditions of confinement, particularly in light of Reid's preexisting respiratory conditions: COPD and asthma. Compl. ¶ 9C.  Exposure to unsafe levels of toxic substances, such as tobacco smoke,

34

can suffice as a sufficiently dangerous condition to satisfy the objective prong of an Eighth Amendment claim. *Wright*, 2008 WL 5055660, at *10 (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). However, to state an Eighth Amendment conditions-of-confinement claim based on ETS, Reid must demonstrate that he was exposed to "unreasonably high levels" of secondhand smoke. *Jones*, 435 F. Supp. 2d at 250.

As with his inadequate ventilation claim, Reid does not allege sufficient facts for the Court to determine the severity and duration of his exposure to ETS. With respect to ETS exposure at Downstate, Reid alleges only that "smoking indoors was as prevalent then (July 9, 2018) as it was in the early 90's . . . ." Compl. ¶ 9C. At Sing Sing, Reid alleges only that there was "unruly indoor tobacco smoking" and that "indoor smoking is occurring despite DOCCS' so-called 'zero-smoking policy' . . . ." *Id.* Because Reid has provided no further information about the severity or duration of his ETS exposure, he has not alleged enough facts to establish that these conditions posed an objectively unreasonable risk to Reid's health.

Even if Reid had pleaded sufficient facts related to the severity and duration of his ETS exposure at Downstate and Sing Sing, he has not pleaded facts demonstrating that any of the State Defendants knew of and disregarded an "excessive risk" to Reid's health or safety. *See, e.g., Walker*, 717 F.3d at 125. Reid alleges that, while at Downstate, he submitted written complaints to Superintendent Morton and Acting Commissioner Annucci regarding the ETS and

its impact on his health, but that Morton and Annucci did not respond or take any steps to enforce the facility's "no indoor smoking" policy more consistently.  Compl. ¶ 9C.  These allegations, without more, fail to demonstrate that Morton and Annucci were more than merely negligent or disregarded an excessive risk to Reid's health and safety.

Reid's allegations regarding the State Defendants' actions at Sing Sing similarly fail to satisfy the subjective prong of the deliberate indifference inquiry. On August 27, 2018, Reid wrote to Superintendent Capra requesting a windowed cell in Sing Sing's 5-Building due to his preexisting respiratory conditions.  Compl. ¶ 9C; Pl. Opp. State Def. Ex. 2.  Reid stated that his cell at the time was "designed with bars, which doesn't prevent unwanted or harmful fumes[] from hovering into [his] cell,"  Pl. Opp. State Def. Ex. 2.  However, Reid did not specify that he was requesting the cell change due to tobacco fumes specifically and did not provide any details about the severity or prevalence of fumes in or near his cell.  Although Capra initially denied Reid's request, Reid was ultimately re-assigned to a windowed cell in 5-Building on October 3, 2018.  Compl. ¶ 9C.  On October 16, 2018, Reid received a response from McKay, who wrote that while Reid's medical condition did not warrant an accommodation, McKay was aware that Reid had been transferred to a windowed cell in 5-Building.  *Id.*; Pl. Opp. State Def. Supp. Mem. Ex C.  Defendant Washington was copied on McKay's response to Reid.  Pl. Opp. State Def. Supp. Mem. Ex. C.

36

These facts are insufficient to plausibly allege that Capra, McKay, or Washington knew of and disregarded an "excessive risk" to Reid's health. First, Reid's request to be transferred to a windowed cell was ultimately granted, demonstrating that the State Defendants were at least in part responsive to Reid's respiratory concerns due to ETS. Additionally, as discussed above, Reid has not alleged that he informed Capra, McKay, or Washington about the severity or duration of his ETS exposure either before or after he was moved to a windowed cell. For these reasons, Reid has not alleged the requisite facts that Capra and McKay actually knew (or should have known) of and disregarded an excessive risk to Reid's health, and therefore this allegation, as pled, fails to meet the subjective prong of the deliberate indifference test.[12]

### b. Deliberate Indifference to Medical Needs

Reid further contends that the State Defendants were deliberately indifferent to his medical needs by not providing the same level of treatment he received at HHC with respect to physical therapy, his respiratory conditions, podiatry needs (foot pains, in-grown toe nails, painful callus and corns), and neuropathy (through his gabapentin medication). Compl. ¶ 8C; Pl. Opp. State Def. at 21–22. To adequately plead a deliberate indifference to medical needs claim, Reid must allege that he suffered a sufficiently serious deprivation of adequate medical care and that

---

[12] To the extent Reid seeks injunctive relief to address the ETS levels at the Downstate and Sing Sing facilities, Compl. ¶ 9C, V, that claim should be dismissed as moot given Reid's transfer to Great Meadow Correctional Facility. *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility"); *see also Simmons*, 2013 WL 1290268, at *23 n.14.

37

the State Defendants were "subjectively reckless in their denial of medical care." *Spavone,* 719 F.3d at 138.

Reid concedes that he has received some treatment with respect to his physical therapy, respiratory conditions, and neuropathy while in state custody. Compl. ¶¶ 8C, 9C. Thus, the Court will analyze whether the delay or alleged inadequacy of the treatment Reid received was sufficiently serious, rather than whether any underlying condition Reid allegedly suffered from was serious in and of itself. *See, e.g., Ayuso*, 2021 WL 2535535, at *3. Regarding Reid's claim based on his lack of treatment by a podiatrist, the Court will consider whether the underlying conditions of foot pains, in-grown toe nails, corns, and calluses were sufficiently serious. *Id.*; Pl. Opp. State Def. at 21.

Here again, Reid has not pled enough facts to ascertain whether he suffered a sufficiently serious deprivation of medical care. First, Reid alleges that he received physical therapy at Sing Sing "on/off" and that this delayed treatment caused his "rotator cuff strain of muscle(s) and tendon(s) to not heal properly." Compl. at IV. Reid has not pled any facts regarding how frequently he received physical therapy or how much time elapsed between appointments. Therefore, Reid's allegations, without more, do not plausibly allege that the offending conduct is inadequate and what harm, if any, any inadequacy has caused or will likely cause. *Salahuddin*, 467 F.3d at 279–80.

Next, the Court construes Reid's "respiratory conditions" allegations as arising out of his exposure to ETS and the State Defendants' deliberate indifference

38

to its effect on Reid's COPD and asthma. *See* Compl. at 9C; Pl. Opp. State Def. at 21–23. As discussed above, although exposure to tobacco smoke can be sufficiently serious to satisfy the objective prong of an Eighth Amendment deliberate indifference to medical needs claim, Reid has not presently pled enough facts as to the frequency, intensity, duration, and circumstances in which he was exposed to ETS. *Compare Davis v. New York*, 316 F.3d 95, 100–01 (2d Cir. 2002) (court reversed summary judgment in favor of prison officials where plaintiff produced evidence that he had been double bunked with smoker, housed for six years in areas where majority of inmates were smokers, and was then surrounded by seven inmates who were chain smokers or heavy smokers) *with Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (affirming district court's dismissal under Rule 12(b)(6) because three brief encounters with ETS "alleged only *de minimis* injury, and, hence, did not amount to an Eighth Amendment violation").

Last, Reid acknowledges that he received treatment for his neuropathy in the form of physical examinations, by both a hand specialist and neurologist, and gabapentin medication, but contends that the State Defendants' decision to reduce and eventually discontinue his gabapentin medication demonstrated deliberate indifference to his medical needs. Compl. ¶ 10C. After Nurse Monroe informed Reid that "there was an issue with receiving a continued medication named gabapentin," Reid wrote to DOCCS' Deputy Commissioner and Chief Medical Officer Dr. Koenigsmann, and thereafter received an extension of gabapentin. *Id.* at ¶ 10C. Reid then alleges that at some unspecified point in time, a hand specialist

examined him and recommended gabapentin "on two separate occasions," but that

State Defendants Monroe, Ferdous, and Hammer would not provide the medication.

*Id.* Reid was then prescribed another medication, nabumetone, by a "non-

specialist." *Id.* at IV. Reid does not allege whether he continued to experience any

neuropathy symptoms (such as numbness and tingling) even after being prescribed

a different medication and does not allege that he informed any of the State

Defendants of his continuing or worsening condition. Therefore, on the facts pled,

Reid's claim amounts to "a disagreement with or preference for a specific treatment"

– here, gabapentin – "rather than a constitutional violation." *Ayuso*, 2021 WL

2535535, at *4; *see also Sonds*, 151 F. Supp. 2d at 307.

Even if Reid's allegations regarding the delay or inadequacy of physical

therapy, responsiveness to ETS exposure, and neuropathy satisfied the objective

prong of a deliberate indifference to medical needs claim, Reid has not sufficiently

alleged that any of the State Defendants were "subjectively reckless" and knew of

and disregarded a substantial risk of serious harm. First, Reid alleges that he

received physical therapy treatment "on/off" at Sing Sing. Compl. IV. Without

more information on how often Reid received physical therapy and whether he had

any further communication with any State Defendants regarding why this level was

inadequate, the Court cannot determine that any of the State Defendants failed to

act while actually aware of a substantial risk to Reid's health. *Nielsen*, 746 F.3d at

63.

40

Similarly, with regard to ETS exposure, although Reid's initial request to be moved to a windowed cell in Sing Sing's 5-Building was denied, Reid was ultimately moved to a windowed cell in 5-Building on October 3, 2018.  Compl. ¶ 9C.  Reid alleges that tobacco fumes continued to drift into his new cell through the open bars door.  *Id.*  However, Reid does not allege that he ever informed any of the State Defendants about the continued smoke.  Nor does he allege any facts establishing that the State Defendants were actually aware that – despite the window in Reid's cell – the ETS exposure continued to pose a substantial risk of harm to his health.

Additionally, there is no basis for the Court to determine that the State Defendants were subjectively reckless in first reducing Reid's gabapentin medication and then replacing it with another medication.  As discussed above, Reid has not pled any facts to establish that the State Defendants were actually aware of a substantial risk of harm resulting from switching medications.[13]

Reid's last set of allegations in support of his deliberate indifference to medical needs claim centers on his request to be seen by a podiatrist for foot pains, in-grown toenails, corns, and calluses.  Pl. Opp. State Def. at 21.  In the first

---

[13] Reid also alleges that Schupak, a pharmacist at Sing Sing, "tampered with" his gabapentin medication by removing it from its time release capsule and placing it in a clear medicine cup.  Compl. ¶ 10C.  As a result, Reid was "barely able to make it back to his housing unit . . . as if [he] was under a control[led] substance of some sort."  *Id.*  These allegations do not establish that Reid was subjected to a sufficiently serious deprivation of medical care.  Reid does not allege that any effect he experienced as a result of taking non-time released gabapentin "significantly affected" his daily activities or caused him "chronic or substantial pain."  *Brock*, 315 F.3d at 162.  Moreover, Reid has not alleged sufficient facts to demonstrate that Schupak knew of and disregarded a substantial risk to Reid's health when giving him non-time released gabapentin.  Therefore, Reid's allegations against Schupak are insufficient to support a deliberate indifference to medical needs claim.

instance, injuries such as in-grown toenails do not constitute a sufficiently serious medical need that pose an "unreasonable risk of serious damage" to Reid's health. *Walker*, 717 F.3d at 125; *see also Reyes v. Abbasey*, No. 16-CV-191 (FPG), 2020 WL 5814398, at *3 (W.D.N.Y. Sept. 30, 2020) (plaintiff's dystrophic foot due to ingrown toenail, even when coupled with other issues, was not sufficiently serious medical need); *Steele v. Ayotte*, No. 17-CV-1370 (CSH), 2018 WL 731796, at *12 (D. Conn. Feb. 6, 2018) ("Complaints of discomfort do not rise to the level of a serious medical need."). Additionally, Reid has not alleged that he requested treatment from the State Defendants for his foot conditions or that they otherwise knew of and disregarded a substantial risk of harm to Reid's health due to these conditions. Therefore, these allegations are insufficient to support a deliberate indifference to medical needs claim.

In sum, Reid has not alleged any set of facts sufficient to support a cognizable unconstitutional conditions-of-confinement claim or a deliberate indifference to medical needs claim during his time at either Downstate or Sing Sing, and therefore those claims should be dismissed.

3. *Monell* Liability

A municipality or municipal corporation is liable under § 1983 if "the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks omitted). The language of § 1983 makes clear that "Congress did not intend municipalities to be held liable unless action pursuant to

42

official municipal policy of some nature caused a constitutional tort," and therefore "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). In order to succeed on a claim against a municipality under § 1983, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy [or custom] of the municipality caused the constitutional injury." *Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 636 (S.D.N.Y. 2015) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)).

To satisfy the requirement of an official policy or custom, a plaintiff must allege either "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted). A plaintiff cannot show a "policy" or "custom" sufficient to impose municipal liability merely by providing "[p]roof of a single incident of unconstitutional activity . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *Jones*, 2020 WL 1644009, at \*6 (quoting *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823–24

43

(1985)); *see also Cowan*, 95 F. Supp. 3d at 637 ("Generally, a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (internal quotation marks omitted)).  Furthermore, the causation prong requires a plaintiff to "prove a causal link between the policy, custom or practice and the alleged injury in order to find liability against a municipality."  *Brandon*, 705 F. Supp. 2d at 277; *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

The City Defendants argue that Reid's *Monell* claim should be dismissed because he has failed to allege an underlying claim of a deprivation of a constitutional right.  City Def. Mem. at 12.  The Court agrees.  As discussed above, Reid has not plausibly alleged the existence of a constitutional violation.  *See supra* II.B.1; II.B.2.  Moreover, courts in this Circuit have found that "when a plaintiff lacks any underlying claim of a deprivation of a constitutional right, the claim of municipal liability on the part of the municipal defendant must be dismissed as well."  *Lerner v. Hempstead Public Schools*, 55 F. Supp. 3d 267, 283 n.14 (E.D.N.Y. 2014) (citing *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.")); *see also Stewart v. Schiro*, No. 13-CV-3613 (NGG) (VMS), 2015 WL 1854198, at *16 (E.D.N.Y. Apr. 22, 2015) ("the court has already determined that

44

[p]laintiff failed to demonstrate an underlying constitutional violation . . . .

[t]herefore, the *Monell* claim necessarily fails").[14]

   4. <u>Personal Involvement</u>

 "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  To establish personal involvement, a plaintiff must plead that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676).  As the Second Circuit recently stated in *Tangreti*, "[t]he factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary.  The violation must be established against the supervisory official directly." *Id.*

---

[14] There are some instances in which a *Monell* claim can survive a motion to dismiss even where there is no individual liability.  *See Oliver v. City of New York*, No. 19-CV-11219 (PGG) (JLC), 2021 WL 2007444, at *2 (S.D.N.Y. May 20, 2021) (citing *Bishop v. City of New York*, No. 13-CV-9203 (AJN), 2016 WL 4484245, at *4 (S.D.N.Y. Aug. 18, 2016)).  "[T]he Second Circuit has held that if the individual defendants are dismissed for other reasons [than committing a tort] a plaintiff can still recover on his *Monell* claim if he can plead and prove against the municipality that municipal actors committed the tort against the plaintiff and that the tort resulted from a policy or custom of the municipality." *Bishop v. City of New York*, 2016 WL 4484245, at *4 (quotation omitted).  This exception to the general rule does not apply in this case, however, as there is nothing in Reid's pleadings to suggest that any constitutional tort resulted from a municipal policy or custom.

The State Defendants argue that Reid has failed to plausibly allege the personal involvement of Riley, Loughren, Moran, Dr. Koenigsmann, Washington, Nayshuler, Morton, Capra, and Dr. Ferdous (except with respect to her denial of gabapentin), State Def. Mem. at 7–12, as well as Annucci and McKay.  State Def. Supp. Mem. at 2–5.[15]

As an initial matter, because Reid has not adequately pled any underlying claims of a constitutional violation, the Court need not determine whether Reid adequately pled the personal involvement of the State Defendants.  *See, e.g., Rivera v. Royce*, No. 19-CV-10425 (PMH), 2021 WL 2413396, at *10 (S.D.N.Y. Jun. 11, 2021) (whether plaintiff pleaded personal involvement need not be addressed because of failure to plead any underlying constitutional claims) (collecting cases).  However, because Reid is proceeding *pro se*, and for completeness, the Court will consider whether he has sufficiently alleged the personal involvement of any of the State Defendants.

First, with respect to three of the State Defendants (Morton, Washington, and Annucci), Reid's only allegations are that he wrote to them and did not receive a response.  Compl. ¶ 8C; Pl. Opp. State Def. at 13.  However, "it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Allah v. Annucci*, No. 16-CV-1841 (KMK), 2018

---

[15] The City Defendants do not argue that Reid failed to plausibly allege personal involvement, and therefore the Court will not analyze whether Reid's complaint sufficiently alleges the personal involvement of any of the City Defendants.

WL 4571679, at *6 (S.D.N.Y. Sept. 24, 2018) (collecting cases).  Therefore, Reid has failed to adequately allege their involvement.

With respect to Morton, Reid alleges that in June 2018 he "made a good faith written-resolving effort" with Morton, and that on July 5, 2018, he wrote Morton a letter regarding the temperatures and lack of ventilation at Downstate.  Compl. ¶ 8C.  Reid does not allege that Morton responded to either correspondence and therefore fails to plausibly allege Morton's personal involvement in any alleged constitutional deprivations.  *See, e.g.*, *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("Courts in this circuit have said that the receipt of letters or grievances, by itself, does not amount to personal involvement.").

Similarly, Reid's sole allegation against Washington is that he was copied on a letter from Defendant McKay to Reid.  Compl. ¶ 9C.  Reid does not allege that Washington was involved in or responsible for any act or omission giving rise to any alleged constitutional deprivations.  Therefore, like Morton, Washington should be dismissed for lack of personal involvement.[16]  With respect to Annucci, Reid alleges only that he failed to respond to Reid's July 9, 2018 "pouch mail" regarding ETS exposure at Downstate.  Compl. ¶ 9C.  This allegation, without more, is insufficient to establish that Annucci had any personal involvement in any alleged constitutional deprivations.[17]

---

[16] In his opposition papers, Reid appears to concede that Washington had no personal involvement and should be dismissed as a defendant.  Pl. Opp. State Def. at 13.

[17] Reid's opposition papers suggest that Annucci asked Deputy Commissioner McKay to respond to Reid's letter regarding ETS exposure.  *See* Pl. Opp. State Def.

47

With respect to Dr. Koenigsmann, Reid alleges that he wrote to him on July 5, 2018 requesting the same type of care he had received while in the DOC's custody.  Compl. ¶ 8C.  Dr. Koenigsmann did not respond to Reid's letter, but apparently forwarded the letter to RHSA Nayshuler, who responded on August 20, 2018.  *Id.*[18]  Dr. Koenigsmann's forwarding of Reid's letter to another official for handling does not establish that he was personally involved in a constitutional deprivation.  *See, e.g., Mateo*, 682 F. Supp. 2d at 430.  Reid also alleges that he wrote to Dr. Koenigsmann on September 4, 2018 regarding the anticipated reduction of his gabapentin medication.  Compl. ¶ 10C.  On September 10, 2018, Dr. Koenigsmann responded to Reid's letter by observing that Reid was "afforded an extension" of receiving his gabapentin medication.  *Id.*  This allegation does not demonstrate that Dr. Koenigsmann was personally involved in any constitutional violation (if anything, it demonstrates Dr. Koenigsmann's responsiveness to Reid's medical needs and requests).

In addition, while Reid alleges that Nayshuler responded to the letter addressed to Dr. Koenigsmann, he does not provide any facts about the contents of

Supp. Mem., Ex. C.  This too is insufficient to demonstrate that Annucci had personal involvement in any alleged constitutional violations.  *See, e.g., Mateo*, 682 F. Supp. 2d at 430 ("Courts in this circuit have said that the receipt of letters or grievances, by itself, does not amount to personal involvement . . . . Nor is it enough that a supervisor forwarded a complaint or grievance to another official for handling.") (citations omitted).

[18] The record is unclear as to why Nayshuler responded to Reid's letter to Dr. Koenigsmann, but the State Defendants presume that Dr. Koenigsmann forwarded Reid's letter to Nayshuler and requested her to respond.  *See* State Def. Mem. at 9–10.

her response.  Compl. ¶ 8C.  Reid's allegation that Nayshuler, by virtue of her response to the letter, became personally involved in failing to provide the same type of treatment afforded to Reid by the DOC and HHC is conclusory and insufficient to establish that, through her own actions, she violated Reid's constitutional rights.

With respect to Superintendent Capra, Reid alleges that on August 27, 2018, he wrote to Capra requesting reassignment to a windowed cell due to ETS exposure. Compl. ¶ 9C.  Although Capra initially denied the request on September 10, 2018, Reid was eventually moved to a windowed cell on October 3, 2018.  *Id.*  Because Reid's request for a windowed cell was ultimately granted, Capra's September 10th denial is insufficient to establish Capra's personal involvement in any deliberate indifference to Reid's conditions of confinement or medical needs.  Moreover, Capra's inclusion (via "cc") on a letter to Reid from Deputy Commissioner McKay is insufficient to establish that Capra, through his own actions, violated Reid's constitutional rights.

The sole allegation regarding McKay is that on October 16, 2018, Reid "received a response" from him stating that Reid's medical condition "does not warrant reasonable accommodation[.]"  Pl. Opp. State Def. Supp. Mem., Ex. C. Based on the attachments to Reid's opposition papers, it appears that McKay was responding to the July 9, 2018 letter to Annucci and the September 4, 2018 letter to Governor Cuomo.  *Id.*  Those letters predated Reid's reassignment to a windowed cell in 5-Building, and McKay's October 16, 2018 response refers to Reid's

49

subsequent reassignment to that building. *Id.* ("Your complaint was investigated at the facility level, and while your medical condition does not warrant a reasonable accommodation; you were moved to a cell in 5-Building where you have access to, and control of, a window in your cell."). Therefore, in McKay's view, Reid's complaint that he was asked to "respond" to had effectively been resolved. Reid has not alleged that he wrote to McKay (or any other State Defendant) *after* his reassignment to a windowed cell on October 3, 2018 to alert them to persistent ETS exposure or to explain why the windowed cell was an inadequate solution. Thus, this allegation is insufficient to establish that McKay had any personal involvement in an alleged deprivation of Reid's constitutional rights.

With respect to Dr. Ferdous, Reid alleges that his August 13, 2018 letter requesting a windowed cell to prevent ETS exposure should have been forwarded to her, and that her failure to respond constitutes deliberate indifference. Compl. ¶ 9C. Reid does not allege that Dr. Ferdous actually received the August 13th letter or was otherwise made aware of Reid's concerns regarding ETS exposure. Reid also alleges that he wrote to Dr. Ferdous on September 21, 2018 "complaining of not seeing a podiatrist, pulmonary specialist, and neurologist." Compl. ¶ 9C. Reid does not allege that Dr. Ferdous responded to this complaint. These allegations, without more, are insufficient to establish that Dr. Ferdous had any personal involvement in Reid's ETS-related claims. *See, e.g., Mateo*, 682 F. Supp. 2d at 430.

Finally, Reid's allegations against the three SCOC defendants – Chairman Riley, Commissioner Loughren, and Director Moran – arise from their failure to

50

properly train the SCOC's Record Access Officer, who misconstrued Reid's complaints as FOIL requests. Compl. ¶ 11C. Reid has not pleaded enough facts to establish that the misclassification of his complaints as FOIL requests rose to the level of a constitutional violation. Moreover, Reid has not alleged any facts demonstrating that Riley, Loughren, and Moran – through their own actions – had any personal involvement in any alleged deprivation of Reid's constitutional rights.

In sum, Reid has not alleged the personal involvement of any of the defendants discussed herein. This provides a separate basis for dismissal.

### 5. Qualified Immunity

Both the City and State Defendants argue that any named individual Defendants are entitled to qualified immunity. *See* City Def. Mem. at 11; State Def. Mem. at 22–25. Because the Court recommends dismissing Reid's underlying claims, it need not address the City and State Defendants' qualified immunity defense at this time. *Ayuso*, 2021 WL 2535535, at *5; *Gunn*, 2021 WL 1699949, at *10 n.5 (declining to address defendants' qualified immunity arguments after dismissing plaintiff's underlying constitutional claims).

### 6. State Law Claims

Finally, the Court liberally construes Reid's complaint to assert a state law claim of gross negligence against Riley, Loughren, and Moran for failing to properly train the SCOC's Record Access Officer and to properly "supervise" subordinates who deprived Reid of his constitutional rights. Compl. ¶ 11C. The State

51

Defendants argue that to the extent this claim is pled, it should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).  State Def. Mem. at 25.

Any claim of gross negligence here is barred by New York Correction Law § 24, which provides that "[n]o civil action shall be brought in any court of the state . . . against any officer or employee of [DOCCS] . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of duties by such officer or employee." N.Y. Corr. Law § 24; *see also Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (§ 24 applies to claims in federal court).  Therefore, "[c]ourts in the Second Circuit have long held that [§] 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment." *Davis v. McCready*, 283 F. Supp. 3d 108, 123 (S.D.N.Y. 2017).  Accordingly, to the extent that Reid has alleged a state law claim on this basis for gross negligence, it should be dismissed.

Moreover, because Reid fails to state a § 1983 claim as to any of the City and State Defendants, the Court should decline to exercise supplemental jurisdiction over any state law claims that may be construed to be alleged.  *See, e.g., Matican v. City of New York*, 524 F.3d 151, 154–55 (2d Cir. 2008) ("[I]f [the plaintiff] has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims.") (citation omitted); *Dash v. Mayers*, No. 19-CV-414 (GBD) (JLC), 2020

52

WL 1946303, at *9 (S.D.N.Y. Apr. 23, 2020), *adopted sub. nom. Dash v. Doe*, 2020 WL 3057133 (June 9, 2020).

### C. Leave to Amend

In this Circuit, "a *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (internal quotations and alterations omitted). Indeed, the Federal Rules of Civil Procedure mandate that leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]his mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

However, a court may dismiss the claims of a *pro se* litigant without leave to amend when "the substance of the claim pleaded is frivolous on its face," *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citing *Moorish Sci. Temple v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982)), or is "based on an indisputably meritless legal theory," *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*) (internal quotation marks and citation omitted).

For the reasons discussed above, I recommend that the Court dismiss, with prejudice, Reid's deliberate indifference claim based on inadequate footwear, as this claim is inherently defective under the applicable caselaw, and its defects cannot be cured by amendment.

I further recommend that the following claims be dismissed without prejudice and that Reid be given leave to replead:

53

1. Deliberate indifference claims against the City Defendants based on: (a) exposure to asbestos, (b) unsupportive mattress, (c) exposure to tuberculosis, and (d) Reid's premature release from HHC's medical care; and

2. Deliberate indifference claims against the State Defendants based on: (a) inadequate ventilation, (b) exposure to secondhand smoke, (c) inadequate medical care with respect to Reid's physical therapy, respiratory conditions, neuropathy, and podiatry needs.[19]

Reid should be instructed that, if he timely files an amended pleading, it should be titled "Amended Complaint," and it should name as defendants all individuals or entities that were allegedly involved in the deprivation of his federal rights. For each asserted claim, Reid should also be instructed that he will need to specify (1) which facility was involved; (2) when, and for how long, he was exposed to any allegedly unlawful conditions of confinement; (3) the nature of any personal, physical injury Reid suffered as a result of any of the alleged constitutional violations; (4) the nature of each named defendant's personal involvement in the alleged constitutional violation, including whether (and how) each defendant knew or should have known about any challenged conditions of the facilities; and (5) the type of relief Reid seeks for his claims.

---

[19] Because the Court considered allegations made for the first time in Reid's opposition papers, Reid has effectively already had an opportunity to amend and supplement his pleadings. However, because Reid is proceeding *pro se*, the Court recommends that he be given one final opportunity to allege the requisite facts, if they exist, to make his constitutional claims cognizable.

54

### III.   CONCLUSION

For the foregoing reasons, I recommend granting both the City and State Defendants' motions but permitting Reid to file an amended complaint.

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, United States Courthouse, 500 Pearl Street, New York, NY 10007. Any requests for an extension of time for filing objections must be directed to Judge Daniels.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS**

**WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE**

**APPELLATE REVIEW.**  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.  *See Thomas v.*

*Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis,*

*Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).


Dated: August 6, 2021
       New York, New York

_____
JAMES L. COTT
United States Magistrate Judge


A copy of this Report & Recommendation
has been mailed to:

Cedric Reid
DIN No. 18A1936
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821-0051